FILED

IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 2 7 2013 ★

BROOKLYN OFFICE

D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                      :

COREY DAVIS,                     :     11-CV-203 (ARR)(VMS)

                 Plaintiff,         :     <u>NOT FOR ELECTRONIC</u>
                                        :     <u>OR PRINT PUBLICATION</u>

    -against-                         :
                                        :     <u>OPINION AND ORDER</u>

UNITED STATES DEPARTMENT OF HOMELAND    :
SECURITY, TRANSPORTATION SECURITY
ADMINISTRATION; UNITED STATES DEPARTMENT :
OF JUSTICE, FEDERAL BUREAU OF PRISONS; and
FEDERAL BUREAU OF INVESTIGATIONS,     :

                 Defendants.       :
                                        :

------------------------------------------------------------ X

ROSS, United States District Judge:

       Corey Davis ("plaintiff" or "Davis") brings this lawsuit under the Freedom of Information

Act ("FOIA") seeking documents from defendant federal agencies. Defendant agency the

Transportation Security Administration ("TSA") conducted a search and informed plaintiff that it

found no responsive records or it could not confirm or deny the existence of responsive records.

The Federal Bureau of Prisons ("BOP") released some of the documents plaintiff requested,

informed him it was unable to find others, and withheld still others based on exceptions to public

disclosure enumerated in the FOIA. The TSA and the BOP now seek summary judgment, which

plaintiff opposes. Meanwhile, the Federal Bureau of Investigation ("FBI") turned over some

documents to plaintiff and sought a stay during which it planned to release additional documents

at a rate of five hundred per month over thirty-four months. Plaintiff opposed the stay. In its

reply to plaintiff's opposition, the FBI now moves for summary judgment on the ground that

plaintiff failed to pay fees for search and reproduction costs for his request. For the following reasons, defendants' motions are granted in part and denied in part.

## BACKGROUND

I.   *TSA Requests*

On August 9, 2010, Davis submitted a FOIA request to the TSA seeking the following information:

1.   The airline carrier and flight number with the corresponding passenger list for a flight which originated in Dallas-Fort Worth, traveled to Cleveland, Ohio, and then continued on to New York, LaGuardia airport on either March 27, 2006 or March 28, 2006;

2.   Any documents in [the TSA's] possession regarding the flight described in item #1 of this request. This includes any notifications, reports, memorandums, or e-mail from within [the TSA] and from any outside law enforcement agency.

3.   The names and titles of all flight crew members on the flight described in item #1 of this request.

4.   Any documents of the TSA requiring commercial air carriers to electronically store flight records. I.e. passenger lists, incident reports, payment records, flight delays.

5.   The name of the air marshal assigned to the flight described in item #1 of this request.

6.   Any and all documents in [the TSA's] possession bearing the name Corey Davis . . . , Chester Davis . . . , Chet Davis, and or William Duval Carter.

Decl. of Yvonne L. Coates, Ex. A, Dkt. #68 ("Coates Decl."), at 16-17. After plaintiff provided documentation to verify his identity and ensure his personal information would not be released to third parties, Coates Decl. ¶¶ 5-6, the TSA sent plaintiff a letter on April 18, 2011, informing him that the TSA had located "no records responsive to his request." Id. ¶ 9; id., Ex. F. Plaintiff

2

requested that the TSA conduct "a more thorough search" in a letter dated May 29, 2011, id. ¶ 10, and ultimately filed an amended complaint challenging the sufficiency of the TSA's search for records, id. ¶ 11; Dkt. #26, at 4.

As to plaintiff's request for information related to the Dallas-Cleveland-New York flight, Yvonne Coates, the FOIA Officer for the TSA, stated:

> The TSA offices that searched for information in response to Plaintiff's FOIA Request were limited by the identifying information provided about the flight. The only flight information Plaintiff provided was that it originated in Dallas-Fort Worth, traveled to Cleveland, Ohio and continued to New York LaGuardia Airport on either March 27, 2006 or March 28, 2006. On the basis of that information, the TSA was unable to determine the precise flight referenced in the Plaintiff's request and therefore could not search for information that depended on the identification of the flight at issue.

Coates Decl. ¶ 15. As to plaintiff's fourth request for information – relating to "documents of the TSA requiring commercial air carriers to electronically store flight records" – Coates stated, "After consideration by the relevant subject matter experts at [the TSA's Office of Security Operations], the TSA determined there were no responsive records to this request." Id. ¶ 20. The TSA also searched various databases for the names provided by plaintiff in his sixth request for documents and stated that the searches revealed no responsive records. Id. ¶¶ 17-18, 21-23, 25, 28-32. The TSA also searched its No Fly and Selectee Lists, as well as its Secure Flight database, for the names plaintiff identified in his sixth request. Id. ¶¶ 26-27. With respect to these databases, the TSA issued a "Glomar" response, meaning that it refused to confirm or deny the existence of responsive records.[1] Id.

---

[1] The Glomar response takes its name from the Hughes Glomar Explorer, a ship that was the subject of the FOIA request at issue in Phillippi v. CIA, 546 F.2d 1009 (D.C. Cir. 1976).

II.    *BOP Requests*

The BOP received two FOIA requests from plaintiff and located responsive material, some of which it released to plaintiff and some of which it withheld under FOIA exceptions. See generally Decl. of Donna Johnson, Dkt. #70 ("Johnson Decl."). The relevant materials are as follows:

a.    FOIA Request No. 2011–01370

Plaintiff's complaint sought to compel disclosure of several items from the BOP pertaining to this request, including:

1.    Continuous video surveillance footage capturing Unit Three-North at the Metropolitan Detention Center-Brooklyn ("MDC") for twenty-four "hours of each day from March 12, 2009 and May 31, 2009."[2]

2.    Video surveillance footage of the East Building, sixth floor sallyport at the MDC on June 9, 2010, between the hours of 8:00 AM and 9:30 AM.

3.    A complete copy of plaintiff's inmate file (also called the Central File).

4.    A complete copy of plaintiff's Special Investigative Services ("SIS") file, including all information from all BOP facilities.

5.    Copies of any and all correspondence between plaintiff and the BOP.

---

[2]It is not clear from the complaint whether plaintiff meant by this request to obtain the video surveillance footage for all dates between March 12, 2009 and March 31, 2009. His use of the phrase "each and every day," Compl. at 5, suggests this is what he intended. However, the BOP appears to have interpreted his request as seeking video footage only for two days: March 12 and 31, 2009. See Johnson Decl. ¶ 6. Plaintiff does not address this discrepancy in his response in opposition to the BOP's motion for summary judgment. See Pl.'s Reply in Opp'n to Def.'s Mot. for Summ. J., Dkt. #62.

6.      The full name and title of a BOP employee named Ms. or Mr.
        Tapp.

7.      The names, inmate ID numbers, and bedding assignments of all
        inmates housed in Unit Three-North at the MDC any time between
        March 1, 2009 and May 31, 2009.

8.      Recordings of all telephone calls made by plaintiff while housed at
        the MDC, FCI Beckley, and the Federal Detention Center-
        Philadelphia, including a record of time, date, length of call, and
        location within the institution from which the call was placed.

9.      Any and all records documenting the BOP's participation in and/or
        cooperation with investigations by any law enforcement agencies
        regarding plaintiff.

Compl., Dkt. #1, at 5-6; see Johnson Decl. ¶ 6. The BOP informed plaintiff in a letter on June 3,

2011 that it had identified one hundred pages of records and one compact disc ("CD") that were

responsive to plaintiff's request. Johnson Decl. ¶ 8. The BOP released seventy-two pages of

those documents to plaintiff in their entirety, and released twelve pages with excisions. Id.

Sixteen pages of documents and the CD were withheld in their entirety, pursuant to FOIA

exemptions (b)(6) and (b)(7)(C), id.; however, the BOP subsequently sent a CD containing

sixteen recorded conversations to the MDC and advised institutional staff to allow plaintiff to

listen to the conversations, id. ¶ 9. The BOP stated in the June 3, 2011 letter that it found no

records responsive to plaintiff's request for his SIS file or his request for the names,

identification numbers, and bed assignments of all inmates housed within Unit Three-North at

the MDC from March 12, 2009 to May 31, 2009. Id. Ex. B, at 2. The BOP provided the full

name of its employee Cynthia Tapp, but did not provide a title. Id. Finally, with respect to the

request for video surveillance, the BOP informed plaintiff that it was processing his request. Id.

In support of its motion, the BOP also submitted a declaration of Walter Obando, an "SIS technician" at the MDC, familiar with the MDC's practices regarding retention of video surveillance recordings. Decl. of Walter Obando ("Obando Decl."), Dkt. #71, ¶¶ 1-2. Obando stated that "[o]ther than a video recording of a May 8, 2009 assault perpetrated by plaintiff against a fellow MDC inmate in Unit 3-N . . . no video surveillance recordings were located in response to [plaintiff's request]." Id. ¶ 5. The declaration further stated, "The MDC retains video surveillance for at least 30 days, and up to 60 days, unless otherwise required for administrative or evidentiary purposes." Id. ¶ 6.[3] The Obando declaration also stated that the MDC saves audio recordings of telephone calls from the facility for 180 days. Id. ¶ 9.[4] Obando stated that the MDC possessed copies of audio recordings of plaintiffs' calls from May 4, 2010 through December 31, 2010, id. ¶ 8, as well as records regarding the date, time, and duration of the call, as well as the location within the MDC from which the call was placed, id. ¶ 10. The MDC did not retain records on the cost of the call. Id. The records requested by plaintiff were saved and copies were forwarded to the MDC's Legal Counsel. Id. ¶¶ 8, 11.

  b.  FOIA Request. No. 2011-02164

Plaintiff's amended complaint sought to compel disclosure of additional items from the BOP, including:

---

[3]The May 8, 2009 assault described in the Obando declaration was the subject of a criminal case in this district, in which plaintiff was convicted of assault. See United States v. Davis, No. 10-CR-100(JG).

[4]In a subsequent declaration, Obando stated that any video and audio recording that are not retained for administrative or evidentiary purposes are deleted and are not backed up on hard drives. Supplemental Decl. of Walter Obando, Dkt. #71-1, ¶¶ 5-7, 10.

1. A complete list of all 100- and 200-level incident reports for assault that were issued at the MDC and Metropolitan Correction Center ("MCC") between 2000 and 2010.

2. All records of 100- and 200-level incident reports that were issued at the MDC and the MCC that were subsequently referred to the FBI for prosecution between 2000 and 2010.

3. Any and all records documents the FBI's acceptance or rejection of the aforesaid referrals.

Am. Compl., Dkt. #26, at 1-2; see Johnson Decl. ¶ 10. The BOP notified plaintiff by letter dated March 29, 2012 that ninety-seven pages were received in response to his request. Johnson Decl. ¶ 12; accord id., Ex. E. Sixty-eight pages were released to plaintiff in their entirety and twenty-nine pages were released with excisions. Id. ¶ 12. The letter informed plaintiff that the excisions were made because they contained third-party information and information intended for staff use only, which "could reasonably constitute an unwarranted invasion of personal privacy." Id., Ex. E, at 1. With respect to the third request, seeking any and all records documenting the FBI's acceptance or rejection of MDC and MCC referrals, the letter informed plaintiff that a search fee of $5,382.00 had been assessed for the request, and the search would take up to six hundred hours. Id. at 1-2.

In his opposition to summary judgment, plaintiff asserted that the records he received were incomplete because they did not indicate whether the 100- and 200-level incident reports listed therein had been referred for prosecution. Pl.'s Mot. in Opp'n to Def.'s Mot. for Summ. J. & a Stay ("Pl.'s Opp'n Mot."), Dkt. #62-3, ¶ 38. He also argued that the BOP's claim that they required prepayment of the search fee and six hundred hours to search amounted to "bad faith, or at a minimum[,] error." Id. ¶ 42.

c.       Third FOIA Request to the BOP

In his amended complaint, plaintiff also alleged that he made a third request to the BOP

on May 31, 2011[5] for the following information:

1.       Any and all records pertaining to an August 8, 2009 incident at the
         MDC in which three pieces of plaintiff's mail "turned up
         shredded."

2.       Any and all records pertaining to an incident which occurred on or
         about December 28, 2009 at the Federal Detention Center-
         Philadelphia, in which an inmate with the last name El-Sibbai left a
         map in the cell shared by El-Sibbai and plaintiff. The request
         included the map, as well as any records of involvement by any
         branch of the Department of Justice in investigating the incident.

3.       Verification from the outgoing legal mail logs maintained at the
         MDC that plaintiff sent three pieces of mail to the Warden
         MacDougal Walker Correctional Institution in Connecticut on
         August 15 and 29, 2010 and January 11, 2011.

See Am. Compl. at 2-3. The BOP did not address this request in support of its motion for

summary judgment. However, in reply to plaintiff's opposition to summary judgment, the BOP

provided the declaration of Sarah Lilly, a legal assistant at FCI Beckley, who stated that

plaintiff's request was received at the BOP's FOIA/PA Section in Washington, DC on June 1,

2011; that due to an error with the BOP's electronic referral system, plaintiff's request was

misplaced; that plaintiff was advised of the problem and asked to resubmit his request directly to

Lilly; and, that as of Lilly's declaration, plaintiff had not responded to the BOP's

correspondence. Lilly Decl. ¶¶ 5-8, 10. The BOP therefore considered the request closed. Id. ¶

9.

---

[5]Plaintiff states this request was made on May 31, 2011, see Am. Compl. at 2; Pl.'s Opp'n
Mot. ¶ 43; however, documentation provided with the Declaration of Sarah Lilly indicates the
request was dated May 19, 2011. Decl. of Sarah Lilly ("Lilly Decl."), Dkt. #76, Ex. A.

III.  *FBI Request*

On April 6, 2011, plaintiff submitted a FOIA request to the FBI seeking two categories of records, including, as relevant here:

> All records relating to the following corrections facilities' cooperation with the [FBI] in [its] investigation of Corey Davis . . . . This request includes any agent notes, interview notes, 302's, audio or video records, affidavits, written agreements, waivers, telephone records or recordings, computer records, memos, E-mails, and or any other relevant, related, and tangible records[,]

followed by a list of five detention centers. Am. Compl. at 4-5; Decl. of David Hardy ("Hardy Decl."), Dkt. #69, ¶ 5; id., Ex. A. After some correspondence back and forth with plaintiff, the FBI advised plaintiff on September 1, 2011 that it had "identified records potentially responsive to his request but they were not in their expected location and could not be located after a reasonable search." Hardy Decl. ¶ 12. The FBI informed plaintiff it was administratively closing his request due to its inability to locate the records, and plaintiff named the FBI as a defendant in this suit in his amended complaint. Id. ¶¶ 12-13. Plaintiff made several additional requests[6] of the FBI for information it possessed about him and related to its investigation of him for a criminal case brought in the District of Connecticut.[7] See id., Ex. H, I. The FBI was able to locate records responsive to these requests, and notified plaintiff that approximately sixteen thousand pages and fifteen CDs of potentially responsive material had been located, with

---

[6] One of these requests was made to the FBI's Dallas Field Office. See Supplemental Decl. of David Hardy ("Supplemental Hardy Decl."), Dkt. #79, Ex. I. Plaintiff stated in his third supplemental complaint that the Dallas Field Office never responded to his request. See Dkt. #39, at 3. On December 5, 2011, however, Hardy wrote to plaintiff and informed him that his request to the Dallas Field Office was being aggregated with his original request. Supplemental Hardy Decl., Ex. J.

[7] See No. 07-CR-011(JCH).

duplication fees estimated at $1,815.00. Id. ¶ 16. Plaintiff responded to this notification by letter dated December 2, 2011, stating that he was willing and able to pay all costs associated with the release of the records described in the FBI's correspondence. Id. ¶ 17; accord id., Ex. L. The FBI subsequently made three interim releases of material to plaintiff, for which plaintiff paid the relevant fees. Id. ¶¶ 21-23, 24; see also Supplemental Hardy Decl., Ex. T. The FBI made an additional interim release to plaintiff, for which it instructed him no payment was required. Hardy Decl. ¶ 25.

As of the filing of the instant motion for summary judgment, the FBI stated that it had completed review of 3,265 pages of material, while approximately 12,839 pages and sixteen DVDs of material remained to be reviewed. Id. ¶ 38. The FBI estimated that, at its rate of reviewing five hundred pages a month, it needed thirty-four months to review all of the documents and the sixteen DVDs. It therefore sought a stay of this action to continue to process plaintiff's request. See Mem. of Law in Supp. of Defs.' Mot. for Summ. J. & a Stay, Dkt. #72, 14.

Following this submission, the FBI made its fifth interim release of material to plaintiff on June 29, 2012, and instructed plaintiff to remit payment of $55.80 for this release. Supplemental Hardy Decl. ¶ 26. On August 16, 2012, the FBI informed plaintiff that the fees from the June 29, 2012 release were overdue and that it had stopped processing his request. Id. ¶ 27; id., Ex. W. Plaintiff subsequently notified the FOIA officer of a change of address. Id., Ex. X. On September 10, 2012, the FBI again informed plaintiff that it had stopped processing his request because it had still not received payment for the June 29, 2012 release. Id., Ex. Y. The letter stated that "[s]ince this has been a recurring issues, we are requiring you to pay the full

estimated amount in advance." Id. (citing 28 C.F.R. § 16.11(i)(2)-(3)). The FBI gave plaintiff thirty days to pay the estimated balance of $1,712.50. Id. On January 24, 2013, the FBI offered to proceed with plaintiff's request if plaintiff agreed to narrow the scope of the request and pay an outstanding balance of $96.20. Id., Ex. AA. Plaintiff responded on February 3, 2013, that he did not wish to have his request narrowed in any way and objecting to the FBI's aggregation of his requests. Id., Ex. BB. According to the FBI, plaintiff has not remitted any further payment for the processing of his FOIA requests. Id. ¶ 33. Consequently, as of the filing of its reply to plaintiff's opposition to its motion for a stay, the FBI stated that it "has discontinued processing responsive requests, considers this matter resolved, and will proceed to close the request." Id. ¶ 37 (citing 28 C.F.R. § 16.11(i)(4)). The FBI therefore now moves for summary judgment, rather than a stay. See Reply Mem. of Law in Further Supp. of Defs.' Mot. for Summ. J. 8.

## DISCUSSION

I.  *Summary Judgment Standard*

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994) (citing 5 U.S.C. § 552(a)(4)(B)). Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." Id. "The agency is not expected to take extraordinary measures to find the requested records, but only to conduct a search reasonably designed to identify and locate responsive documents." Garcia v. U.S. Dep't of Justice, Office of Info. & Privacy, 181 F. Supp. 2d 356, 368 (S.D.N.Y.

2002); see also Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986) ("[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request.").

To establish the adequacy of a search, an agency affidavit or declaration must be "relatively detailed and non-conclusory" and "submitted in good faith." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted); see also Wood v. FBI, 432 F.3d 78, 85 (2d Cir. 2005). "This means, for instance, that an agency affidavit or declaration must describe in reasonable detail the scope of the search and the search terms or methods employed." Serv. Women's Action Network v. Dep't of Def., 888 F. Supp. 2d 231, 240-41 (D. Conn. 2012). "[T]he affidavits 'should identify the searched files and describe at least the general structure of the agency's file system which renders any further search unlikely to disclose additional relevant information.'" Katzman v. CIA, 903 F. Supp. 434, 438 (E.D.N.Y. 1995) (quoting Church of Scientology v. IRS, 792 F.2d 146, 151 (D.C. Cir. 1986)). Affidavits submitted by an agency are 'accorded a presumption of good faith.'" Carney, 19 F.3d at 812 (quoting Safecard Servs., Inc., 926 F.2d at 1200).

Summary judgment is inappropriate where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory." Nat'l Day Laborer Organizing Network v. U.S. Immigration & Customs Enforcement, 877 F. Supp. 2d 87, 96 (S.D.N.Y. 2012) (internal quotation marks omitted). Once the agency has satisfied its burden, the plaintiff may defeat summary judgment by making a showing of bad faith or by providing evidence that an exemption claimed by the agency should not apply. Carney, 19 F.3d at 812.

II.    *Application*

   a.    TSA Request

Plaintiff did not oppose the TSA's motion for summary judgment in his opposition papers. See Dkt. #62-3. Nevertheless, the court has examined the Coates Declaration to determine the adequacy of the TSA's search and whether the withheld documents fall under exemptions to the FOIA.

   1.    Coates' Ability to Provide a Declaration

Coates states that she is the FOIA Officer for the TSA and is responsible for processing all requests made to the TSA under FOIA and "for supervising the determination of what records or portions thereof should be disclosed." Coates Decl. ¶ 1. She states that she is familiar with the TSA's obligations under FOIA and the Privacy Act, and avers that the statements made in her declaration are "based on my personal knowledge, information made available to me in the performance of my officials duties, and conclusions and determinations reached in accordance therewith." Id. ¶ 2. Coates does not further describe her role in the TSA's search for responsive records in plaintiff's case, but instead goes on to describe the searches conducted by seven offices within the TSA that the agency identified as potentially possessing responsive records. Id. ¶¶ 13-34.

The Second Circuit has held that, for summary judgment purposes, the agency should submit an "affidavit from [the] agency employee responsible for supervising [the] FOIA search." Carney, 19 F.3d at 814. At least one court in this district has interpreted this language to require that the affidavit be submitted by an official involved in the specific search for the documents at issue in the FOIA request. See Katzman, 903 F. Supp. at 438. In Katzman, defendant the

Central Intelligence Agency ("CIA") submitted the declaration of John H. Wright, the agency's Information and Privacy Coordinator, who, like Coates, averred that his statements were based on "personal knowledge, information made available to [him] in [his] official capacity, the advice of the CIA's Office of General Counsel, and conclusions reached in accordance therewith." Id. at 437 (alterations in original) (internal quotation marks omitted). The court held that this declaration was insufficient to meet the CIA's burden of establishing the adequacy of the search, explaining, "Although Wright testifies that he is responsible for directing the search of CIA records, he fails to elaborate on the extent of his involvement with respect to the plaintiff's search request." Id. at 438. The court further explained that, as Wright had stated that three component offices of the CIA had conducted a search for records pertaining to plaintiff, Carney required that declarations from supervisory personnel in each of those components should be obtained. Id.

Since Katzman, however, district courts within this circuit and in the D.C. Circuit have found an official with broader supervisory authority who is not necessarily involved in the specific search for the records at issue to be capable of submitting a sufficient declaration. See, e.g., Serv. Women's Action Network, 888 F. Supp. 2d at 251 (declaration of "second line supervisor" who "doesn't seem to have actually supervised the search, but seems to have been an attenuated supervisor of a person who did" was sufficient where declarant provided a "thorough description of the search" and "reasons why certain actions were taken"); Holt v. U.S. Dep't of Justice, 734 F. Supp. 2d 28, 38 (D.D.C. 2010) (declarations averring familiarity with agency's components' procedures for handling FOIA requests were sufficient without statement of declarant's personal knowledge of the handling of plaintiff's FOIA requests); Blunt-Bey v. U.S.

14

Dep't of Justice, 612 F. Supp. 2d 72, 74 (D.D.C. 2009) ("declarants' statements . . . based on

their personal knowledge acquired through the performance of their official duties and their

review of the official files" were sufficient for summary judgment); cf. El Badrawi v. Dep't of

Homeland Sec., 583 F. Supp. 2d 285, 299-300 (D. Conn. 2008) (declaration of chief of agency's

FOIA branch, who stated she was "familiar" with plaintiff's FOIA request and declaration was

based on "information furnished to her in her official capacity," held insufficient on other

grounds).[8]

The court need not resolve this issue as a matter of law. See Serv. Women's Action

Network, 888 F. Supp. 2d at 244 ("The Court believes that the discrepancies in the case law

reflect the fact-intensive nature of this inquiry . . . [accordingly,] it ultimately resolves the parties'

arguments on this point on the basis of the individual declarations."). Suffice it to say that

Coates' declaration permits the court to infer that she has personal knowledge to support the

motion for summary judgment. Most importantly, Coates states that she is "responsible for

processing all requests made to TSA under FOIA . . . and for supervising the determination of

what records or portions thereof should be disclosed." Coates Decl. ¶ 1 (emphasis added).

Further, Coates' office identified those components of the TSA that were likely to have

_____

[8]The Serv. Women's Action Network court also cited Adamowicz v. IRS, 672 F. Supp.
2d 454, 463 (S.D.N.Y. 2009), as finding sufficient the declaration of a supervisor who delegated
a search to his subordinate, who, in turn, delegated to another employee. 888 F. Supp. 2d at 244.
However, this court finds Adamowicz distinguishable since the declarant in that case was the
official actually in charge of processing the plaintiff's specific request, rather than a general
supervisor. See 672 F. Supp. 2d at 463 ("Dichter was the officer assigned to process plaintiff's
FOIA request."). Adamowicz therefore clearly falls within Carney's holding that "[a]n affidavit
from an agency employee responsible for supervising a FOIA search is all that is needed . . . ;
there is no need for the agency to supply affidavits from each individual who participated in the
actual search." 19 F.3d at 814.

responsive records, id. ¶ 12, and Coates provided detailed descriptions of each of these components' search methods, id. ¶¶ 17-18, 21, 23, 25-32. This information was based on her "personal knowledge, information made available to [her] in the performance of [her] official duties, and conclusions and determinations reached and made in accordance therewith." Id. ¶ 2. Although this latter statement is nearly identical to the generalized statement found insufficient in Katzman, and Coates does not elaborate on the extent of her involvement in processing plaintiff's search request, the court finds that her supervisory position, combined with the thorough description of the search and her familiarity with TSA search procedures, constitutes sufficient personal knowledge for Rule 56(c)(4). See Serv. Women's Action Network, 888 F. Supp. 2d at 251; see also Barnard v. Dep't of Homeland Sec., 598 F. Supp. 2d 1, 19 (D.D.C. 2009) ("FOIA declarants may include statements in their declarations based on information they have obtained in the course of their official duties.").

    2.    Adequacy of Search

Plaintiff's request to the TSA sought three categories of records: records relating to the airline flight from Dallas-Forth Worth to New York-LaGuardia via Cleveland on March 27, 2006 or March 28, 2006 ("the flight records"); any and all documents bearing the name Corey Davis, Chester Davis, Chet Davis, and/or William Duval Carter ("the name records"); and documents that require air carriers to store flight records electronically ("the electronic storage records").

With respect to the name records, the TSA identified seven component offices that might possess records responsive to plaintiff's request. Coates Decl. ¶ 13. Coates' declaration describes in detail the function each component office serves within the TSA, the databases they searched, and the search terms used. Id. ¶¶ 16-18, 21-32. The description is detailed and non-

conclusory. Accordingly, the court finds that the TSA engaged in an adequate search for the name records.

With respect to the electronic storage records, the Coates declaration states that the Office of Security Operations ("OSO") "manages the TSA's domestic security operations, with the exception of law enforcement, including the security operations and administrative procedures for all commercial airports and the management of all transportation security officers. It also maintains reports and inspections pertaining to regulatory compliance." Id. ¶ 19. The declaration then states, "After consideration by the relevant subject matter experts at OSO, TSA determined there were no responsive records to this request." Id. ¶ 20. The declaration does not explain how these experts arrived at this determination; what, if any, databases they searched; what actions were taken to determine whether responsive records existed in other components; or whether plaintiff was asked to provide a more specific request. The single statement in the declaration does not provide sufficient detail and is conclusory. Accordingly, the court finds that the Coates declaration does not support a finding that the TSA conducted an adequate search for the electronic storage records.

Finally, with respect to the flight records, the Coates declaration states:

The TSA offices that searched for information in response to Plaintiff's FOIA Request were limited by the identifying information provided about the flight. The only flight information Plaintiff provided was that it originated in Dallas-Fort Worth, traveled to Cleveland, Ohio and continued to New York LaGuardia Airport on either March 27, 2006 or March 28, 2006. On the basis of that information, the TSA was unable to determine the precise flight referenced in the Plaintiff's request and therefore could not search for information that depended on the identification of the flight at issue.

Id. ¶ 15 (emphasis added).[9] The plain implication is that the TSA did not conduct a search for the flight records at all.

Under FOIA, "[a]n agency's obligation to process a request for records is predicated on the agency's receipt of a request which reasonably describes the records sought and is made in accordance with published rules stating the time, place, fees, and procedures to be followed." Sussman v. U.S. Dep't of Justice, No. 03 CIV.3618(DRH)(ETB), 2006 WL 2850608, at *9 (E.D.N.Y. Sept. 30, 2006). "Records are reasonably described when the description would enable a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort," but "broad sweeping requests lacking specificity are insufficient." Tooley v. Bush, No. 06-306 (CKK), 2006 WL 3783142, at *14 (D.D.C. Dec. 21, 2006) (citations omitted). Pursuant to FOIA, 5 U.S.C. § 552(a)(3)(A), the Department of Homeland Security ("DHS")[10] has promulgated the following regulation regarding the procedure to be followed for making requests:

> Description of records sought. You must describe the records that you seek in enough detail to enable Department personnel to locate them with a reasonable amount of effort. Whenever possible, your request should include specific information about each record sought, such as the date, title or name, author,

---

[9]The declaration also states that one component, the Office of Law Enforcement/Federal Air Marshal Service ("OLE/FAMS"), did conduct a search for reports for March 27, 2006 and March 28, 2006 that contained the names of the airports provided by plaintiff. Id. ¶ 18. The TSA also queried the Claims Management Systems at Dallas-Fort Worth International Airport and New York-LaGuardia International Airport, but these searches appear just to have sought the name records, not the flight records. See id. ¶¶ 28-29, 31-32.

[10]The TSA was merged into the DHS in 2003, pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002). The TSA remained a distinct agency until two years after the date of enactment of the Homeland Security Act, November 25, 2002. See 6 U.S.C. § 234(b); see also 49 C.F.R. § 1507.1 ("The procedures governing access to, and correction of, records in a TSA system of records are set forth in 6 CFR part 5, subpart B.").

recipient, and subject matter of the record. If known, you should include any file designations or descriptions for the records that you want. As a general rule, the more specific you are about the records or type of records that you want, the more likely the Department will be able to locate those records in response to your request. If a component determines that your request does not reasonably describe records, it shall tell you either what additional information is needed or why your request is otherwise insufficient. The component also shall give you an opportunity to discuss your request so that you may modify it to meet the requirements of this section. If your request does not reasonably describe the records you seek, the agency's response to your request may be delayed.

6 C.F.R. § 5.3(b).

Here, plaintiff provided a request for information about a flight with a particular itinerary on two specific days in 2006. Although the court is unaware of flight patterns, it takes judicial notice of the fact that Cleveland is not an obvious way station between Dallas and New York.[11] See Boyce Motor Lines v. United States, 342 U.S. 337, 344 (1952) ("We may, of course, take judicial notice of geography."). Plaintiff's request – seeking specific information from a limited range of dates – appears to describe the records he sought in sufficient detail to enable the TSA to locate them with a reasonable amount of effort. Moreover, the TSA was required, under the DHS's FOIA regulations, to tell plaintiff what additional information was needed or why plaintiff's request was insufficient. See id. ("If a component determines that your request does not reasonably describe records, it shall tell you either what additional information is needed or why your request is otherwise insufficient.") (emphasis added). The submissions from the TSA make clear that no such correspondence took place. Cf. Tooley, 2006 WL 3783142, at *15

---

[11]The court also notes (but does not rely upon for the purposes of deciding this motion) that an internet search for flights from Dallas-Fort Worth to New York LaGuardia shows two such flights with a stopover in Cleveland on a given day: United Flight 4518 (departing Dallas-Fort Worth at 2:35 P.M.) and United Flight 4627 (departing Dallas-Fort Worth at 7:50 P.M.). See Kayak, http://www.kayak.com/#/flights/DFW-LGA/2013-06-20 (last visited June 19, 2013).

("Consistent with DHS regulations, DHS requested that Plaintiff provide DHS with additional information."). The TSA responded to plaintiff's request for the name records by requesting information to verify plaintiff's identity. Coates Decl., Ex. B. The only correspondence it produced regarding the flight records simply informs plaintiff, "no records responsive to your request were located." Id., Ex. F.[12] These letters give no indication that the agency afforded plaintiff "an opportunity to discuss your request so that you may modify it to meet the requirements of this section." 6 C.F.R. § 5.3(b). The TSA therefore failed to follow its own procedures regarding plaintiff's request for the flight records.

Plaintiff made a request that reasonably described the records he was seeking, and the TSA conducted no search at all. This record does not support a finding that the TSA conducted an adequate search for the flight records.

### 3. Withholding Based on FOIA Exemptions

The TSA searched its No Fly and Selectee Lists, as well as its Secure Flight database, for the name records, and issued a Glomar response, refusing to confirm or deny the existence of responsive records. Coates Decl. ¶¶ 26-27. The Second Circuit recently approved an agency's use of the Glomar response in situations "'where to answer the FOIA inquiry would cause harm cognizable under a[] FOIA exception.'" Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 68 (2d Cir. 2009) (alteration in original) (quoting Gardels v. CIA, 689 F.2d 1100, 1103 (D.C. Cir. 1982)). In order to invoke the Glomar response, "an agency must tether its refusal to respond to one of the nine FOIA exemptions-in other words, a government agency may . . . refuse to confirm or deny

---

[12]This letter was written after the commencement of litigation, supporting plaintiff's allegation in the original complaint that "[t]he TSA has not responded in any way to the Plaintiff's requests for releasable records." Compl. at 4.

the existence of certain records . . . if the FOIA exemption would itself preclude an acknowledgment of such documents." Id. (alterations in original) (internal citations and quotation marks omitted). Like the adequacy of the search inquiry, an agency asserting the Glomar response has the burden of proving the applicability of the exemption, which it may do through a detailed affidavit. Id. In evaluating an agency's Glomar response, "a court must accord 'substantial weight' to the agency's affidavits, 'provided [that] justifications for nondisclosure are not controverted by contrary evidence in the record or by evidence of . . . bad faith.'" Id. (alterations in original) (quoting Minier v. CIA, 88 F.3d 796, 800 (D.C. Cir. 1996)). "The court should 'attempt to create as complete a public record as possible . . . The [a]gency's arguments should then be subject to testing by [plaintiff], who should be allowed to seek appropriate discovery when necessary . . . ." Id. (alterations in original) (quoting Phillippi, 546 F.2d at 1013).

Here, the TSA tethered its Glomar response to FOIA exemption 3. Coates Decl. ¶¶ 26, 35-38. Exemption 3 applies to records

specifically exempted from disclosure by statute . . . if that statute

(A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or

(ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and

(B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3). The TSA cites 49 U.S.C. § 114 as the governing statute, Coates Decl. ¶ 36, which provides in relevant part:

Notwithstanding [FOIA], the Under Secretary shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security under authority of the Aviation and Transportation Security Act (Public Law 107-71) or under chapter 449 of this title if the Under Secretary decides that disclosing the information would–

(A) be an unwarranted invasion of personal privacy;

(B) reveal a trade secret or privileged or confidential commercial or financial information; or

(C) be detrimental to the security of transportation.

49 U.S.C. § 114(r). The Coates Declaration states, "Because TSA uses the No Fly and Selectee Lists for passenger pre-board screening, merely acknowledging the presence or absence of information identifying plaintiff constitutes [sensitive security information]. Therefore this information must be withheld under Exemption 3." Coates Decl. ¶ 38 (citing 49 C.F.R. § 1520.5(b)(9)(ii) (identifying as sensitive security information "[i]nformation and sources of information used by a passenger or property screening program or system, including an automated screening system.")).[13]

The courts that have examined § 114(r) in the context of FOIA have unanimously concluded that the statute qualifies as a statute prohibiting disclosure under FOIA exemption 3. See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., Civil No. 10-1992(RCL), 2013 WL 829483, at *4-5 (D.D.C. Mar. 7, 2013); Skurow v. U.S. Dep't of Homeland Sec., 892 F. Supp. 2d 319, 332 (D.D.C. 2012); Tooley, 2006 WL 3783142, at *20; Elec. Privacy Info. Ctr. v. Dep't of

---

[13]The TSA does not discuss its search of the Secure Flight database in the portion of the Coates declaration discussing the basis for invoking the Glomar response. Its description of the Secure Flight program makes clear, however, that Secure Flight relies upon data from the No Fly and Selectee List. Coates Decl. ¶ 27. Consequently, the court considers the TSA's arguments in support of its Glomar response as applying to both the No Fly and Selectee Lists and the Secure Flight database.

Homeland Sec., 384 F. Supp. 2d 100, 109 (D.D.C. 2005); see also Pub. Citizen, Inc. v. FAA, 988

F.2d 186, 194 (D.C. Cir. 1993) (holding nearly identical language in 29 U.S.C. § 1357(d)(2)

qualifies as statute under FOIA exemption 3); Chowdury v. NW Airlines Corp., 226 F.R.D. 608,

611-612 (N.D. Cal. 2004) (holding § 114(s) applies to prohibit disclosure under Fed. R. Civ. P.

26(b)(1)).[14] This court similarly determines that the statute "establishes particular criteria for

withholding," 5 U.S.C. § 552(b)(3)(A)(ii), and therefore finds that the statute fits within FOIA

exemption 3. Accordingly, the court concludes that the TSA properly invoked a Glomar

response to plaintiff's inquiry, having "tether[ed] its refusal to respond to one of the . . . FOIA

exemptions." Wilner, 592 F.3d at 68 (internal quotation marks omitted); see Skurow, 892 F.

Supp. 2d at 332 ("The Court finds that the TSA's Glomar response to plaintiff's FOIA request

was entirely proper and squarely within the realm of its authority."); Tooley, 2006 WL 3783142,

at *20 (finding that Glomar response to request regarding a person's presence on TSA watch lists

was proper under § 114(r)); see also Gordon v. FBI, 388 F. Supp. 2d 1028, 1037 (N.D. Cal.

2005) ("Requiring the government to reveal whether a particular person is on the watch lists

would enable criminal organizations to circumvent the purpose of the watch lists by determining

in advance which of their members may be questioned.").

Based on the foregoing, the court grants the TSA's motion for summary judgment as to

the name records, and denies the motion as to the flight records and the electronic storage

records.

---

[14]Several of these cases refer to § 114(s), which formerly authorized the TSA to prohibit
the disclosure of certain material found to be detrimental to the security of transportation; in
2007, this subsection was redesignated as § 114(r). Pub. L. 110–161 § 568, 121 Stat. 1844
(2007). See Elec. Privacy Info. Ctr., 2013 WL 829483 at *4 n.4.

b.    BOP Request

1.    Johnson Declaration

The declaration of Donna Johnson states:

> I am a Paralegal Specialist for the [BOP], Northeast Regional Office, in Philadelphia, Pennsylvania. I have held this positions since January 2008. As part of my official duties, I assist in coordinating responses to [FOIA] requests made to the BOP for records maintained in the Northeast Region. I have access to the Freedom of Information Act and Privacy Act (hereinafter, 'FOIA/PA') files of the requests processed in this Office. I am familiar with, and received training on, the policies and procedures regarding the processing and release of information under the FOIA/PA. . . . I have reviewed the Complaint . . . and the Amended Complaint . . . and understand that the Plaintiff, Corey Davis . . . alleges the BOP has failed to comply with or respond to his requests for information under FOIA.

Johnson Decl. ¶¶ 1-2. The declaration goes on to state, "Records maintained in this Office reflect that BOP's Northeast Regional Office received two requests submitted by Plaintiff to the BOP, Central Office . . . . These were forwarded to the BOP's Northeast Regional Office for processing." Id. ¶ 3. The declaration then goes on to describe some of the BOP's general FOIA policies, id. ¶¶ 4-5, plaintiff's requests, e.g. id. ¶ 6, and the documents released or withheld in response to plaintiff's request, e.g. id. ¶ 8. Notably, the declaration does not further describe Johnson's role in either conducting or supervising any of the searches, asserts no personal knowledge or familiarity with the search methods actually used in plaintiff's case, and asserts no personal knowledge or familiarity with the responsive records discovered in the processing of plaintiff's request.[15]

---

[15]Johnson's supplemental declaration, to which a Vaughn Index is annexed, provides no additional information from which the court could infer her competency to testify regarding the processing of plaintiff's request. See Supplemental Decl. of Donna Johnson, Dkt. #75, at 1.

As discussed above, an affidavit from the agency employee who actually conducted the search in a FOIA case is not required to support summary judgment; an affidavit from a supervisor responsible for the search is sufficient. Carney, 19 F.3d at 814. In addition, "FOIA declarants may include statements in their declarations based on information they have obtained in the course of their official duties." Barnard, 598 F. Supp. 2d at 19. Nevertheless, as with all summary judgment cases, affidavits "must be made on personal knowledge, set out facts that out be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In the FOIA context, "a declarant satisfies the personal knowledge requirement . . . if, 'in his declaration, [he] attest[s] to his personal knowledge of the procedures used in handling [a FOIA] request and his familiarity with the documents in question.'" Hainey v. U.S. Dep't of Interior, No. 11-cv-1725 (RLW), 2013 WL 659090, at *5 (D.D.C. Feb. 25, 2013) (alterations in original) (quoting Hall v. Dep't of Justice, 63 F. Supp. 2d 14, 16 n.1 (D.D.C. 1999)). Here, Johnson attests to familiarity with the procedures regarding the processing of FOIA requests, but says nothing about her personal knowledge or familiarity with the documents in question. Indeed, she asserts no basis for competency to testify about the BOP's handling of plaintiff's request, other than to say she reviewed the Complaint and the Amended Complaint. Johnson Decl. ¶ 2.

In Prison Legal News v. Lappin, 603 F. Supp. 2d 124 (D.D.C. 2009), the District Court of the District of Columbia encountered a declaration similarly bereft of assertions of personal knowledge. The BOP, also the defendant agency in that case, presented the affidavit of a Paralegal Specialist who, like Johnson, represented that he was "familiar with the procedures utilized by [the Bureau] in responding to . . . FOIA requests." Id. at 127 (alterations in original)

25

(internal quotation marks omitted). The court noted that the affiant did "not outline the search methods undertaken . . . , who would have conducted the searches, and . . . nowhere does the affiant indicate how he is personally aware of the search procedures or that he knows they were followed by each of the Bureau's entities tasked with responding to this request." Id. The court concluded, "All of these deficiencies undermine the sufficiency of the affidavit." Id.

Here, as in Prison Legal News, the BOP's primary declarant gives no indication that she is aware of the search procedures actually used in plaintiff's case or has any familiarity with the documents uncovered in the search. The court will not presume personal knowledge of the declarant. See id. (citing Shaw v. FBI, 749 F.2d 58, 63 n.2 (D.C. Cir. 1984)). Accordingly, the Johnson declaration is insufficient to support the BOP's motion for summary judgment.

　　　　2.　　　Obando Declarations

The BOP also submitted declarations of Walter Obando, an SIS Technician at the MDC. Dkt. #71. Obando states that he conducted the search for plaintiff's requested video surveillance materials himself. Id. ¶ 4. Accordingly, his declarations present sufficient evidence of personal knowledge.

Obando states that with the exception of video recordings of plaintiff's May 8, 2009 assault on another inmate, id. ¶ 5, and December 21, 2009 cell extraction, Second Supplemental Decl. of Walter Obando, Dkt. #71-2, ¶ 7, he could not locate any video surveillance records in response to plaintiff's request, Obando Decl. ¶ 5.[16] The reason for this is that the MDC retains

---

[16]The other video recordings in question were the subject of an order this court entered in a miscellaneous case filed by plaintiff on April 23, 2010. See Davis v. Terrell, No. 10-mc-0292. In that case, the court ordered the MDC on June 15, 2011, to preserve any materials still in existence upon the filing of the order. Id., Dkt. #21, at 3. However, as all the recordings requested by plaintiff predated the order by more than sixty days, according to Obando, such

video surveillance for only thirty-to-sixty days, after which the recordings are deleted to make space for newer recordings. Supplemental Decl. of Walter Obando ("Obando Supplemental Decl.") ¶ 5. Obando also states that plaintiff requested telephone recordings and records for calls placed by plaintiff between February 1, 2009 and December 31, 2010. Obando Decl. ¶ 7. Obando states that the MDC possesses recordings and records of telephone calls placed by plaintiff during that period. Id. ¶¶ 8, 10. Obando asserts no basis for withholding any of the materials within the MDC's possession.

With regard to the video recordings that have been deleted, "FOIA is only directed at requiring agencies to disclose those agency records for which they have chosen to retain possession or control." Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 151-52 (1980) (internal quotation marks omitted). "An agency does not control a record which has been destroyed, and it is under no obligation to obtain a duplicate of or to re-create a record in order to fulfill a FOIA request." James v. U.S. Secret Serv., 811 F. Supp. 2d 351, 358 (D.D.C. 2011) (citing Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 162 (1975)) (internal citation omitted); accord Malinowski v. FBI, No. 86 Civ. 2239 (JFK), 1987 WL 12826, at *1 (S.D.N.Y. June 17, 1987) ("Simply put, if no documents exist, nothing can be withheld . . . ."). FOIA therefore does not obligate the BOP to turn over the deleted video recordings.

With regard to those video recordings that were retained, as well as the audio recordings and records of telephone calls placed by plaintiff from the MDC, these records are within the

_____

recordings would have been deleted pursuant to the MDC's retention policies. Obando Supplemental Decl. ¶ 5.

possession of the MDC, and the BOP asserts no basis for withholding them. Accordingly, the BOP is directed to release any of these records to plaintiff that have not yet been released.

### 3. Lilly Declaration

The BOP submits a declaration from Sarah Lilly, a legal assistant for the Beckley Consolidated Legal Center at FCI Beckley, in response to plaintiff's May 19, 2011 request (described as "Third FOIA request" above). Lilly Decl. ¶¶ 1, 5. The Lilly declaration suffers from many of the same deficiencies as the Johnson declaration. Lilly states that she "ha[s] access to information regarding inmates in the Bureau of Prisons' custody," including "the Freedom of Information Act/Privacy Act ('FOIA/PA') database." Id. ¶ 3. Lilly does not, however, attest to having any familiarity with plaintiff's FOIA request, based on either personal knowledge or information gathered in the course of her official duties. The declaration is therefore insufficient to support the BOP's motion for summary judgement.

At any rate, Lilly states that the BOP did not produce responsive records to plaintiff's request because the BOP misplaced plaintiff's request. Id. ¶¶ 6-7. Lilly states that plaintiff was advised that he needed to inform her office if he wished to pursue his request for records, and the request was closed when plaintiff did not respond. Id. ¶¶ 8-9. Plaintiff makes clear, however, that he does wish to pursue this request, as he opposes the BOP's motion for summary judgment in part on the grounds that he never received a response to his May 19, 2011 request. See Pl.'s Opp'n Mot. ¶¶ 43-47. The BOP is accordingly on notice of plaintiff's desire to pursue this request. The court therefore directs the BOP to reopen plaintiff's May 19, 2011 request and release any records whose disclosure is mandated under FOIA.

c.    FBI Request

As of the filing of defendants' reply brief, the FBI had closed plaintiff's request for

failure to pay outstanding fees.  Supplemental Hardy Decl. ¶ 37.  Neither party has advised the

court of any change in status from this date.  Consequently, the court will proceed to consider the

FBI's motion for summary judgment on the basis of plaintiff's failure to pay the fees.

FOIA authorizes agencies to promulgate regulations specifying the schedule of fees

applicable to the processing of FOIA requests and establishing when such fees should be waived

or reduced.  5 U.S.C. § 552(a)(4)(A)(I).  In cases such as plaintiff's, the "fees shall be limited to

reasonable standard charge for document search and duplication."  Id. § 552(a)(4)(A)(ii)(III).

The agency may require advance payment of fees if the requester has previously failed to pay fees

in a timely fashion, or the agency determines that the fee will exceed $250.  Id.

§ 552(a)(4)(A)(v); see also 28 C.F.R. § 16.11(i).

On this record, the FBI properly assessed plaintiff a fee for the search and duplication

costs associated with his request.  Plaintiff informed the FBI that he was willing and had the

ability to pay the fees.  Hardy Decl. ¶ 17.  The FBI subsequently informed plaintiff that it had

stopped processing his request when his fees were overdue.  Supplemental Hardy Decl. ¶ 27; id.,

Ex. W.  Plaintiff did not remit payment.  Id., Ex. X.  Thereafter, the FBI properly required

plaintiff to prepay the outstanding balance of fees, directing plaintiff's attention to the relevant

regulation.  Id., Ex. Y (citing 28 C.F.R. § 16.11(i)(2)-(3)).  The FBI also gave plaintiff an

opportunity to narrow his request and pay a smaller fee.  Id., Ex. AA.  Plaintiff still did not remit

payment, and had not done so as of the date the record on this motion became complete.  Id. ¶

33.[17] The FBI was therefore no longer required to process plaintiff's request. Accordingly, the FBI's motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part. The motion is granted as to the TSA's search for the name records, and denied as to the TSA's search for the flight records and the electronic storage records. The motion is granted with respect to the TSA's invocation of the Glomar response. The motion is denied as to the BOP, except with respect to the video surveillance recordings that are no longer in the agency's possession. The motion is granted as to the FBI. To the extent that defendants' motion for summary judgment is denied on this record, the denial is without prejudice.

SO ORDERED.

/S/

Allyne R. Ross.
United States District Judge

Dated: June 27, 2013
Brooklyn, New York

---

[17]The record does not contain any indication that plaintiff sought a fee waiver from the FBI under 5 U.S.C. § 552(a)(4)(A)(iii), which provides that the fees shall be waived or reduced "if disclosure of the information is in the public interest . . . and is not primarily in the commercial interest of the requester." The court notes that, although plaintiff's request is not primarily commercial, the nature of plaintiff's request – seeking information about the FBI's investigation of plaintiff himself – makes it hard to fathom how plaintiff could "show[] that disclosure to him will have a sufficient breadth of benefit beyond his own interest," Carney, 19 F.3d at 814 n.4 (internal quotation marks omitted), so as to qualify for a fee waiver. Cf. Banks v. Dep't of Justice, 605 F. Supp. 2d 131, 139 (D.D.C. 2009) ("A requester's private interest is not relevant to the fee waiver analysis, and an attack on a criminal conviction is a private interest.").

**Service List:**

Corey Davis
# 42898-053
USP Tucson
U.S. Penitentiary
P.O. Box 24550
Tucson, AZ 85734