UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
COREY DAVIS,                                             :
                                                         :
                              Plaintiff,                 :
                                                         :           **ORDER**
               -against-                                 :
                                                         :           11 Civ. 203 (ARR) (VMS)
UNITED STATES DEPARTMENT OF                              :
HOMELAND SECURITY, et al.,                               :
                                                         :
                              Defendants.                :
-------------------------------------------------------- x

**Scanlon, Vera M., United States Magistrate Judge:**

District Judge Ross's August 14, 2014 Opinion and Order directed the Federal Bureau of Prisons ("BOP") to provide Plaintiff with: (1) all correspondence between Plaintiff and the BOP; (2) records containing the job title of BOP employee Cynthia Tapp; and (3) records containing the names and register numbers of all inmates housed in cell block 3 at Manhattan Detention Center ("MDC") between March 1, 2009 and May 31, 2009, including bedding assignments for each inmate. See August 14, 2014 Summary Judgment Order, ECF No. 104, p. 13. These three directives appear to be the only outstanding issues in this matter, as all of Plaintiff's remaining claims have been dismissed or resolved. See generally ECF Nos. 79, 104. On November 10, 2013, this Court requested confirmation that the BOP has complied with the August 14, 2014 Opinion and Order. See ECF No. 123.

BOP's counsel confirmed that it had fully complied with the three directives, see ECF Nos. 125, 132, but Plaintiff claims that the BOP failed to adequately provide him with the MDC records he sought, see ECF No. 129.[1] More specifically, Plaintiff claims that the BOP's

---

[1] Plaintiff does not dispute that the BOP has responded fully to the two remaining Freedom of Information Act requests. See ECF No. 129.

1

production is inadequate because: (1) the BOP conducted an inadequate records search by failing to "identify at which date and time a particular inmate was housed in Unit 3-North at the MDC"; and (2) improperly redacted all inmate's names and register numbers (with the exception of his own). See id. Having now reviewed in camera unredacted copies of the redacted documents produced by the BOP to Plaintiff the Court finds that the BOP has fully complied with the August 14, 2014 Opinion and Order.

**I.     Adequacy of Search**

Contrary to Plaintiff's contention, the BOP's document production identifies each and every inmate housed in cell block 3 at MDC between March 1, 2009 and May 31, 2009 (albeit in redacted form). The first page of the document indicates the correct search parameters and date range sought (in the top right-hand corner), and the roster produced includes Plaintiff's cell and bedding assignment, as well as the cell and bedding assignments of the other inmates housed in the cellblock and the dates the inmates were assigned to specific cells during the relevant time period. See ECF No. 132, Exhibit B, p. 1, 9-16.[2] As such, the BOP conducted an adequate records search that identified the information sought by Plaintiff and produced same.

**II.    Propriety of Redactions**

The BOP argues that it properly redacted inmate names and register numbers in order to avoid an unwarranted invasion of privacy pursuant to Freedom of Information Act statutory exemptions §§ 552(b)(6) and (b)(7)(C). Plaintiff, on the other hand, argues that the inmate names and register numbers should be disclosed because incarcerated individuals "ha[ve] no

---

[2]     Plaintiff's belief that the BOP failed to adequately search for the information sought may stem from the fact that the roster originally produced to Plaintiff is unusually formatted. The roster totals 16 pages, each page of which contains several columns. The document, though, is truly 8 pages long printed 2 pages across. In other words, page 9 is a horizontal continuation of page 1, page 10 is a horizontal continuation of page 2, and so on.

reasonable expectation of privacy in his or her prison cell," Salahuddin v. Mead, 95 Civ. 8581 (MBM), 2002 U.S. Dist. LEXIS 15827, at *17 (E.D.N.Y. Aug. 26, 2002) (citing Hudson v. Palmer, 468 U.S. 517, 525-26 (1984)), and because this information has previously been made publicly available on the BOP's website.

Exemption 6 exempts an agency from releasing information the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. See 5 U.S.C. § 552(b)(6). When Exemption 6 is invoked, the privacy interest of the third-party individual is weighed against the public's interest. See United States DOD v. FLRA, 510 U.S. 487, 497 (1994) ("We must weigh the privacy interest . . . in nondisclosure . . . against the only relevant public interest in the FOIA balancing analysis -- the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens 'know what their government is up to.'") (quoting DOJ v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773 (1989)); Multi Ag Media LLC v. USDA, 515 F.3d 1224, 1228 (D.C. Cir. 2008) (noting that if requested information falls within Exemption 6, the next step in the analysis is to determine whether disclosure would constitute a clearly unwarranted invasion of personal privacy by balancing the privacy interest that would be compromised by disclosure against any public interest in the requested information).

Similarly, Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . ." 5 U.S.C. § 552(b)(7)(C). "Exemption 7(C) differs from Exemption 6 in two respects." Human Rights Watch v. DOJ Fed. Bureau of Prisons, 13 Civ. 7360 (JPO), 2015 U.S. Dist. LEXIS 123592, at *10 (S.D.N.Y. Sept. 16, 2015). "It protects only information

3

'compiled for law enforcement purposes' . . . [a]nd the disclosure need not 'constitute' a 'clearly' unwarranted invasion of personal privacy, but need only 'reasonably be expected to constitute' an unwarranted invasion of privacy." Id. As such, "[f]or documents compiled for law enforcement purposes, 'Exemption 7(C) is more protective of privacy than Exemption 6.'" Id. (quoting United States DOD, 510 U.S. at 496 n.6). Accordingly, if the BOP "successfully asserts Exemption 7(C), then there is no need to consider Exemption 6." Id. The Court, thus, begins its analysis with Exemption 7(C).

The Exemption 7(C) analysis proceeds in three steps. "First, the Court asks whether the documents were 'compiled for law enforcement purposes.'" Id. (quoting Families for Freedom v. U.S. Customs & Border Prot., 837 F. Supp. 2d 287, 294 (S.D.N.Y. 2011)). If that threshold is satisfied, the Court determines "whether there is any privacy interest in the information sought." Assoc. Press v. United States DOD, 554 F.3d 274, 284 (2d Cir. 2009). "[O]nce a more than de minimis privacy interest is implicated," the Court determines the applicability of the exemption by balancing "the public interest in disclosure" against the privacy interest. Id. at 284-85.

As explained below, at a minimum, the BOP properly redacted the inmate names and register numbers to protect third-party inmates from an unwarranted invasion of personal privacy pursuant to statutory exemption § 552(b)(7)(C). As a result, the Court need not consider Exemption 6.

      **a.**    **Law Enforcement Purposes**

"The Second Circuit has not explained its understanding of the term 'compiled for law enforcement purposes.'" Human Rights Watch, 2015 U.S. Dist. LEXIS 123592, at *12 (citing Families for Freedom, 837 F. Supp. 2d at 294). The D.C. Circuit, however, has explained that "[l]aw enforcement entails more than just investigating and prosecuting individuals after a

violation of the law," including "proactive steps designed to prevent criminal activity and maintain security." Public Employees for Envtl. Responsibility v. United States Section, Int'l Boundary & Water Comm'n, 740 F.3d 195, 203 (D.C. Cir. 2014).

Here, the inmate names and register numbers sought by Plaintiff were compiled for law enforcement purposes, thus falling within the ambit of Exemption 7(C). A particularized list of inmates at any given time, particularly when combined with bedding and cell assignments, is used by the BOP to monitor and track the movement of prisoners within its custody, many of whom are in the midst of ongoing criminal prosecutions. At a minimum, this information is assembled to permit the BOP to timely provide same to law enforcement officials when needed, maintain security within prison confines, identify prisoners who may pose specific security risks and/or need to be separated from particular groups of inmates, and prevent prisoner escape.

### b. Privacy Interest

"The privacy interests protected by the exemptions to FOIA are broadly construed." Associated Press v. United States DOJ, 549 F.3d 62, 65 (2d Cir. 2008) (citing Reporters Comm., 489 U.S. at 763). "Specifically, they embody the right of individuals 'to determine for themselves when, how, and to what extent information about them is communicated to others.'" Id. (citing Reporters Comm., 489 U.S. at 764 n.16 (internal quotation marks omitted). "This protection extends even to information previously made public," as well as "[p]ersonal information, including a citizen's name, address, and criminal history . . . ." Id. (citing Reporters Comm., 489 U.S. at 763-64); see, e.g., United States DOD, 510 U.S. at 497 (union employees' names and home addresses); Reporters Comm., 489 U.S. at 780 (information contained in FBI rap sheets); Dep't of the Air Force v. Rose, 425 U.S. 352, 358 (1976) (cadets' names and other identifying information in disciplinary files); Wood v. FBI, 432 F.3d 78, 80-81 (2d Cir. 2005)

5

(names and other identifying information about FBI agents responsible for conducting an administrative investigation of agent misconduct); Judicial Watch, Inc. v. DOJ, 365 F.3d 1108, 1109-10 (D.C. Cir. 2004) (personal information included in petitions for pardons).

Here, the privacy interests at stake are more than de minimis as Plaintiff seeks third-party inmates' names and—by virtue of their presence in BOP custody—a piece of their criminal history. See Assoc. Press, 549 F.3d at 65 ("Personal information, including a citizen's name . . . and criminal history[] has been found to implicate a privacy interest cognizable under the FOIA exemptions."); see also Human Rights Watch, 2015 U.S. Dist. LEXIS 123592, at *14 ("An inmate has a privacy interest in 'personal facts' to be kept 'away from the public eye' [and t]hat interest is 'particularly pronounced where disclosure could lead to embarrassment or retaliation.'") (quoting Assoc. Press, 554 F.3d at 286). Similarly, while the register numbers may be innocuous to most, many inmates, including Plaintiff, may be capable of deducing an inmate's identity using the register number, a given inmate's status in the facility, or relationships as to other inmates (i.e., inmates may be housed separately to keep rival gang interactions to a minimum). See Dep't of Air Force v. Rose, 425 U.S. 352, 380 (1976) ("[W]hat constitutes identifying information regarding a subject [] must be weighed not only from the viewpoint of the public, but also from the vantage of those who would have been familiar" with the subject's background).

Plaintiff's argument that the BOP should not have redacted the inmate names because incarcerated individuals have no reasonable expectation of privacy has been rejected by the Second Circuit. See Assoc. Press, 554 F.3d at 286-87 (holding that identities of Guantanamo Bay detainees associated with abuse allegations were entitled to protection, and noting that "[a]lthough the detainees here are indeed like prisoners, their Fourth Amendment reasonable

6

expectation of privacy is not the measure by which we assess their personal privacy interest protected by FOIA" but rather "the privacy interest for purposes of Exemption 7(C) is broad and encompasses "the individual's control of information concerning his or her person") (internal quotations omitted). Likewise, the mere fact that the requested information may been previously disclosed to the public does not affect the privacy interest maintained by the third party inmates. See Reporters Comm., 489 U.S. at 767 (noting "the privacy interest inherent in the nondisclosure of certain information even where the information may have been at one time public"); Halpern v. FBI, 181 F.3d 279, 297 (2d Cir. 1999) (explaining, in the context of FOIA Exemption 7(C), that "[c]onfidentiality interests cannot be waived through prior public disclosure or the passage of time").

        c.        **Balancing With The Public Interest**

To determine whether the documents in question "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the Court must weigh the privacy interest against the public's interest in disclosure. Assoc. Press, 554 F.3d at 284. "The only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on the agency's performance of its statutory duties or otherwise let citizens know what their government is up to." Bibles v. Or. Natural Desert Assoc., 519 U.S. 355, 355-56 (1997) (emphasis in the original) (internal quotations omitted).

Generally, the privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of their identities] is not just less substantial, it is insubstantial." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir. 1991). "[U]nless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling

evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." Id. at 1206; see Nation Magazine v. United States Customs Serv., 71 F.3d 885, 896 (D.C. Cir. 1995). "The requesting party bears the burden of establishing that disclosure of personal information would serve a public interest cognizable under FOIA." Assoc. Press, 549 F.3d at 66.

Here, Plaintiff has failed to demonstrate that disclosure of the inmate names and register numbers would serve a cognizable public purpose such that the information may not be withheld under the privacy exemptions as he has not provided any justification, let alone a sufficiently weighty justification, for disclosure of the information sought. Moreover, on its face, nothing in Plaintiff's request for inmate names and register numbers is probative of the BOP's behavior, operations, or performance. As such, Plaintiff has failed to carry his burden. See id.

### III. Conclusion

In light of the above, the BOP has demonstrated that it has fully complied with the three directives contained in the Court's August 14, 2014 Summary Judgment Order as: (1) the BOP conducted an adequate records search that identified the names, register numbers, and bedding assignments of all inmates housed in cell block 3 of MDC between March 1, 2009 and May 31, 2009; and (2) properly redacted the inmate names and register numbers as exempt pursuant to statutory exemption § 552(b)(7)(C) because this information is gathered for law enforcement purposes, implicate a significant privacy interest, and Plaintiff has failed to demonstrate "that release of the information would shed light on the workings of government." Assoc. Press, 549 F.3d at 66.

Dated: Brooklyn, New York
      April 6, 2016

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge